(6 App. Div. 19.)

PEOPLE ex rel. McGINNISS v. PALMER, Comptroller.

(Supreme Court, Appellate Division, Second Department. June 2, 1896.)

1. OFFICE AND OFFICER—DURATION OF TERM.
    A person employed by the board of supervisors of Kings county to have the care and custody of books and records of the county, by virtue of Laws 1892, c. 686, § 26, which authorizes the board of supervisors "to provide for their safe-keeping," retains his employment and right to compensation until relieved by the officer of the city who, by Laws 1895, c. 954, consolidating the city of Brooklyn and the county of Kings, was made the custodian of such books and records, though, under the act of consolidation, the board of supervisors had ceased to exist.

2. EVIDENCE—JUDICIAL NOTICE.
    Judicial notice will be taken of the fact that the public officer who is charged with the duty of caring for public books and records has not the manual custody of them, but acts through clerks and other subordinates.

**8. OFFICE AND OFFICER—TERMS OF APPOINTMENT**
    A clerk appointed by the board of supervisors of Kings county to be cus-
todian of the records "until such time as the county records are by law
directed to be transferred" to the city by Laws 1895, c. 954, consolidating
the city of Brooklyn and the county of Kings, limits the term of employ-
ment to the time of the actual transfer, and not to the day on which the
consolidation between the city and county would take effect. Cullen and
Bartlett, JJ., dissenting.

Appeal from special term, Kings county.

Application by John J. McGinniss for a writ of mandamus to
compel George W. Palmer, as comptroller of the city of Brooklyn,
to pay plaintiff for services alleged to have been rendered to said
city. From an order denying the application, relator appeals.
Reversed.

Argued before BROWN, P. J., and PRATT, CULLEN, BART-
LETT, and HATCH, JJ.

John J. McGinniss, in pro. per.
Joseph A. Burr, for respondent.

BROWN, P. J. The relator by this proceeding seeks to recover
his salary for the month of January, 1896, for services rendered
in relation to the care and custody of the papers and records of
the late board of supervisors of Kings county. The motion was
denied at the special term upon the ground that, by the express
provision of the resolution of said board, his term of employment
expired on January 1, 1896. There were no papers read on the mo-
tion, except the affidavit of the relator, and the resolutions of the
board annexed thereto, and there is consequently no dispute upon
the facts of the case.

I do not deem it important to this motion to consider the question
discussed by the learned corporation counsel, whether the effect
of the consolidation act was to create a new corporation, under
the title of the "City of Brooklyn," or whether the county govern-
ment was simply merged into, and consolidated with, the city.
The resolution of the board of supervisors under which the relator
acted, and which fixed his compensation, did not create an office.
The relator was simply an employé of the county. The board of
supervisors were by law the custodian of county property, and the
books and records of the county, and were especially charged with
the care of the latter, and directed "to provide for their safe keep-
ing." Laws 1892, c. 686, § 26. The consolidation law is drawn
in the most general terms. It makes no specific provision for the
care and safe-keeping of county records. All county property is
declared to be vested in the city after January 1, 1896, and all
duties of the board of supervisors after that date are devolved
upon the common council of the city. From and after that date
the board of supervisors and all county government ceased, and
the local government for the whole county was vested in the city
of Brooklyn; and all charges, compacts, and obligations of the
county, or which, but for the consolidation act, would have been
enforceable against the county, were imposed upon, and made en-

forceable against, the city.    It would be too narrow a construction of the power of the board of supervisors to hold that its contracts with its employés having the care and custody of county property necessarily terminated absolutely on the 1st day of January, 1896.    While the title to property passed from the county to the city on that date, and new public officers became charged with its care, the actual physical transfer from one officer to another would be a much slower proceeding.    The law does not contemplate that the public officer who is charged with the duty of caring for public books and records has the manual custody of them.    He acts through clerks and other subordinates, and the court will take judicial notice of that fact.    The consolidation act should not have such a construction as would prevent the public records and books from having an actual custodian.    The public interests would not permit us to so construe it, unless the language used actually compelled it.    I am of the opinion, therefore, that the employés of the board of supervisors having the actual custody of its books and records retained their employment, and right to compensation for such services, until they were relieved by the officer of the city who was, by the charter or consolidation act, made the custodian thereof.    Such a construction is reasonable and proper, as it is in the interest of the preservation of public property; and it was within the power of the city officials to discharge the employés of the board at any time, and take the actual custody of its records.    Such officials must be presumed to know the law, and their duties with respect to the records; and if they failed to remove them from the custody of the employés of the county, or make arrangements for their care, they must be presumed to have acquiesced in the arrangement existing, and impliedly continued the county employés in the city's service.

The relator is therefore entitled to be paid for his services, unless his employment was for a fixed term.    If it was, then his claim is equitable, and not legal, and the order appealed from must be affirmed.    The facts in relation to the relator's employment are not in dispute, and, in my judgment, they are such as to entitle him to be paid his salary.    It appears that up to and including the month of May, 1895, the relator was the clerk to the supervisor at large.    From the 1st day of June he was employed as an assistant to the clerk of the board of supervisors, in the care and safe-keeping of the county records, for which services his salary was fixed at $250 a month.    It does not appear, from the papers before us, that he had or performed any other duties.    It is true that the body of the resolution of May 20th provides that the clerk shall be the custodian of the records "until such time as the county records are by law directed to be transferred" to the city.    But that expression is not controlling as to the term of the relator's employment.    It is plain, I think, from the title of this resolution, and from the resolution of December 27th, that the term of employment was intended to be limited by the time of the actual transfer, and not by the day of the month on which consolidation between the city and county would take effect.    The title of the

resolution of May 20th is, "To provide for the custody and safe-keeping of the records and documents," etc., "until transferred to the city authorities pursuant to section 26 of chapter 686 of the Laws of 1892." The title of the resolution of December 27th is, "To provide for the custody and safe-keeping of records and documents and the care of county property until transferred to the city authorities," etc. These expressions clearly contemplate an actual physical transfer, as distinguished from the legal transfer of the title of the property. The resolution of December makes this more apparent by its reference to the "costs and expenses incidental to the care, custody, transfer, and handling of the records from the county to the city," etc., and by designating the fund from which such expenses were thereafter to be paid. The allegation of the relator's affidavit that for the month of January, 1896, he performed the duties imposed upon him in reference to the care of the public records, is not denied, and for the services so rendered he was entitled to be paid his salary.

The order appealed from should be reversed, and the motion for a mandamus granted.

PRATT and HATCH, JJ., concur.

CULLEN, J. (dissenting). It is not necessary to determine or examine as to what should be the theory on which the county of Kings and the city of Brooklyn were consolidated by chapter 954, Laws 1895. Whether the county and the city, by that statute, are to constitute a new corporation known by the name of the "City of Brooklyn," or whether the county is merged into the then present corporation of the city of Brooklyn, does not, in our opinion, affect the rights of the relator. Conceding, to the fullest degree, the claim of the corporation counsel that the old city corporation still survives, it is plain that the county organization was not in all respects abrogated or destroyed, but simply merged into the city. In many respects the city organization had not, nor has it now,—unless we consider various departments of the county organization as still existing, despite the consolidation,—machinery to deal with various county functions which must still be continued. The county, as a separate corporation, is abolished, and the county offices which are dependent on or necessary for the continuance of the separate corporate existence merely doubtless determine with the end of that separate existence; but the employment of the employés of the county, in the various positions or departments which were not abolished by the consolidation, was not abrogated by that event. Their employment after consolidation could be terminated by the various departments of the city government under which their duties fell, but, till so terminated, their employment continued. So we think the employés engaged about the courthouse or other county buildings continued in their places until discharged. But we think this rule is not applicable to the relator, for two reasons: (1) While the board of supervisors might have employed him without definite term,

it did not do so, but employed him until a specific time, as specified in the resolution; that is, "until such time as the county records and documents in control of this body are by law directed to be transferred." The employment is not until the transfer should be actually made, but until such time as the records are "by law directed to be transferred." This can refer but to one period,— that is, the 1st day of January, 1896, upon which day the city and county were to be consolidated. (2) The compensation directed to be paid by the resolution of the board was not solely for services as custodian of public records, but also for services as clerk to the board. By the resolution the clerk was constituted custodian of the records, and the relator, with others, only designated to assist him, "as well as to perform their other respective duties so long as they may be required"; and the relator, with the other assistants, was granted a salary of $250 monthly, in lieu of the salaries then paid them. I do not know that we should now decide whether the clerks of the board of supervisors could survive the death of the board. However that may be, the salary the relator now seeks to obtain is claimed solely for his services as assistant to the custodian of records. There is nothing in the papers to show that he continued to discharge the other clerical duties which he was performing at the time of the resolution. The resolution did not give him $250 a month for services only as assistant, and he is therefore not entitled to recover that compensation for such services. If he has performed these services, it is entirely within the power of the city authorities to properly compensate him for them. The order appealed from should be affirmed, without costs.

BARTLETT, J., concurs.